(January 13, 1910.)

## WILLIAM QUAYLE, Respondent, v. W. D. REAM, Appellant.

[106 Pac. 610.]

STATEMENT OF CASE—SUFFICIENCY OF EVIDENCE.

1. A statement of the case, prepared and settled to be used on motion for a new trial, may be used as a bill of exceptions on appeal from the judgment on all questions of law therein saved by exception, although it was never presented or used on motion for a new trial.

2. Evidence in this case examined and *held* sufficient to support the verdict and judgment.

(Syllabus by the court.)

APPEAL from the District Court of the Fifth Judicial District, for Bear Lake County.   Hon. Alfred Budge, Judge.

Action by plaintiff for debt.   Judgment in favor of the plaintiff, and defendant appealed.   *Affirmed.*

Clark & Budge, for Appellant.

Thomas L. Glenn, for Respondent.

Counsel cite no authorities.

AILSHIE, J.—A motion was made in this case to strike from the transcript the statement or bill of exceptions, on the ground that the same purports to be a statement on motion for a new trial, and that notice of intention to move for a new trial was given but that no motion for a new trial was ever made, and that the proposed statement and bill of exceptions was never used on motion for a new trial.   This motion must be overruled on the authority of *Steve v. Bonners Ferry Lumber Co.,* 13 Ida. 392, 92 Pac. 363.   It was there held that "all errors properly saved and assigned in a statement of the case may be reviewed upon appeal from the judg-

ment, although it be taken more than sixty days after the rendition of such judgment, and although the statement be not used on the hearing of a motion for a new trial." The motion is denied.

This case was here on appeal at the January, 1909, term of this court. The plaintiff had recovered judgment in the lower court, and that judgment was reversed by this court· on the grounds of insufficiency of the evidence to support the verdict and judgment. This court observed at that time that the evidence was "most unsatisfactory" and "that the ends of justice will be best served by granting a new trial in this case." The cause was remanded and a new trial was had, and practically the same evidence, with slight additions and variations, was introduced on the new trial as· upon the original trial. The jury again rendered a verdict in favor of the plaintiff. The defendant appealed from the judgment within sixty days after the rendition thereof, and has presented to this court a statement of the evidence given in the case, and asks this court to again reverse the judgment.

The history of the case and the facts and circumstances upon which it turned in the lower court are set out somewhat in detail in the former opinion of this court as reported in 15 Idaho, 666, 99 Pac. 707. We will refrain, therefore, from any further statement of the case, except to call attention to a few incidents and circumstances which influence our decision on this appeal.

The principal controversy arose over the right of the defendant to have an offset of $305 on account of a check given to the appellant, Ream, by one M. Grill, and by Ream indorsed and delivered to respondent, Quayle. The agreement bearing date April 10, 1903, executed in duplicate and introduced in evidence, says: "It is to be looked up and see if any of Mr. Grill and Corollo's checks have been turned to Mr. Quayle. If so, it is to be credited on this settlement." The note sued upon bears date April 11, 1905, and if the agreement, bearing date April 10, 1903, bears the correct date, then this agreement certainly cannot have reference to the settlement wherein and whereby the note sued on was executed.

According to the testimony of the defendant and his wife, however, a mistake was made in the date of the agreement and duplicate, and it should have been "April 10, 1905." It is conceded that the agreement and duplicate were written by Mrs. Ream. She testified that a mistake was made in dating it "April 10, 1903," and that as a matter of fact it was written and signed on April 10, 1905. The plaintiff is not at all positive as to his dates, and appears to have been somewhat confused not only as to the date of this instrument but of other transactions between the parties. This is doubtless partly due to the fact that the accounts were made and the writing was done by Mrs. Ream and not by respondent. The substance of his testimony, however, is to the effect that this agreement was made on the day it bears date, April 10, 1903. The statement of the account between the parties giving the items of debits and credits between them and comprising two sheets of the same kind of paper and evidently from the same tablet that the duplicates bearing date April 10, 1903, were written on, has been introduced in evidence, and it, too, is in the handwriting of Mrs. Ream and shows the balance of $605.34 due Quayle, and this is the amount for which the note was given. The Reams insist that this statement was written at the same time and on the same date that the duplicate agreement was executed. The statement of the accounts, however, bears date at the top of the page "April 10, 1905." This date is placed at about the same position on the page, and is written and abbreviated in the same manner as that on the duplicate agreement. It is difficult to understand how a mistake of two years could have been made in the dating of this agreement, and even if that mistake did occur in writing the *original*, it is still more remarkable that it should have occurred in the *duplicate*, or, in other words, that the mistake would not have been observed in writing the duplicate. The duplicate agreement contains this further statement: "This settlement has been made on the basis that the note of $2,-814.82 begins drawing interest on the first of September, 1903." It is contended by the Reams that this is an evidence that the agreement was actually executed on April 10,

1905, for the reason that the $2,814.82 note was not executed until September 1, 1903, and that the note was not in existence on April 10, 1903. It is the contention of the plaintiff and respondent, however, that this $2,814.82 note of September 1, 1903, was merely a renewal of a previously existing note of the same amount, and this contention finds some support in the testimony of Ream. After testifying to giving the $2,800 note, he says:

"It seems to me like the notes that he took down [referring to Quayle taking the notes to a bank at Salt Lake] they didn't answer, and he came back and then I gave him the second note, he said he wanted it to get security. If I remember rightly, it was in the spring of 1903, I am not sure of that, only I know that I took up the notes and gave the $2,800 note and took up those other notes, and it was done away from home, back of Brennan's store."

At other places in the evidence, however, Ream insists that this note was executed in September as its date indicates.

There is one bit of evidence, or rather circumstance, that appears in this record that was not before us on the last hearing of this case. It is the mortgage that was given to secure the note of $2,814.82, to which is attached what purports to be a copy of the note. The mortgage bears date September 1, 1903. It has attached to it a certificate of acknowledgment made by De Meade Austin, notary public, under date of September 1, 1903, with his seal attached. Immediately following the certificate of acknowledgment is the affidavit made by Ream, which the law requires to accompany chattel mortgages, to the effect that the mortgage is made in good faith and without any design to hinder, delay or defraud creditors. The jurat to this affidavit is signed and attested by De Meade Austin, notary public, under date of "February 1, 1903." The instrument itself shows by indorsement that it was filed with the recorder of Bear Lake county on the *9th day of October, 1903.* Now, these dates are in hopeless confusion and are irreconcilable. This is in harmony with the entire case in the matter of confusion of dates and facts. The certificate of acknowledgment is of the same date of the execution of the mortgage. The affidavit by the mortgagor appears to

have been made in February preceding the date of the execution of the duplicate agreement. The provision in the agreement seems to refer to a note *then in existence,* but which did not begin drawing interest until a *future date.* It says, "the note of $2,814.82 *begins* drawing interest." This is the language that might be used with reference to a future event; but if this agreement was written in 1905 and was referring back to an event that occurred September 1, 1903, it seems to us that it would have said "the note of $2,814.82 *began* drawing interest on the 1st of September, 1903." It should also be noted that all the statements and writings between the parties when they had settlements were made by the wife of appellant.

The facts of this case have been but very little clarified and elucidated to our minds by reason of a new trial, but had we seen and heard the witnesses we might be clearer on the subject. The fact is that twenty-four men, who are qualified jurors of Bear Lake county and evidently neighbors and acquaintances of appellant and respondent, have heard the evidence in this case and insist on believing that the defendant is indebted to the plaintiff in the sum mentioned in their verdict, and that the plaintiff is telling a truthful story when he says that he has settled with the defendant for this $350 check and the other causes of counterclaim, and that the defendant is still indebted to him the sum of this note. The twenty-fifth man, who is the judge of the district court, agrees with the jurors and declines to disturb their verdict. While we feel that the evidence in this record is very meager to support the verdict and judgment, still there is a conflict on many facts and circumstances, and there is some evidence to support the verdict and judgment. We think, in view of all the facts and circumstances of the case, that the judgment should be affirmed, and it is so ordered. Costs awarded in favor of the respondent.

Sullivan, C. J., concurs.

Stewart, J., dissents.

Petition for rehearing denied, Stewart, J., dissenting.